UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ONNET USA, INC., a Delaware Corporation, | No. C 12-06282 LB |
| Plaintiff, | **ORDER GRANTING MOTION TO DIRECT SERVICE OF PROCESS BY PUBLICATION** |
| v. | |
| PLAY9D.COM and John Doe, | [ECF No. 5] |
| Defendants. | |

## INTRODUCTION

Plaintiff OnNet USA, Inc. ("OnNet") filed this action against the domain name play9d.com and the Doe Defendant who registered it (also known as "warv0x," "Jake," or "Play9D"), based on the allegations that Defendants operate a pirated English language version of 9Dragons, a Massively Multiplayer Online Role Playing Game ("MMORPG") to which OnNet has the exclusive English language publication rights. *See* Complaint, ECF No. 1, ¶¶ 3, 26, 31.[1] OnNet alleges that Defendants are liable for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), copyright infringement under 17 U.S.C. § 501 *et seq.*, violation of the Digital Millennium Copyright Act's provisions regarding circumvention of technological copyright protections, 17 U.S.C. § 1201, *et seq.*, and claims for violations of California's false advertising law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and unfair competition law, Cal. Bus. & Prof. Code §

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

17200, *et seq.* OnNet has not been able to locate Defendants and now moves the court to direct service by publication as permitted by the ACPA. *See* Mot., ECF No. 5. Because OnNet has fulfilled the statutory prerequisites for service by publication, and the court finds that OnNet's proposed notice is acceptable to the court, the court GRANTS OnNet's motion and directs service by publication as provided below.[2]

**STATEMENT**

OnNet alleges that it holds the exclusive rights to publish an English language version of 9Dragons, a martial-arts themed MMORPG set in China's Ming dynasty, and has sole ownership of the 9DRAGONS mark as used in reference to any English language versions of the 9Dragons game. Compl., ECF No. 1, ¶¶ 16-19. Since August 10, 2011, OnNet has owned and operated a web site at the domain name 9dragons.gamescampus.com and has continuously used that domain in the publication, promotion, and management of the English language 9Dragons game. *Id.* ¶ 21. As the exclusive licensee, OnNet has filed to register a copyright for the 9Dragons source code with the United States Copyright Office. *Id.* ¶ 26.

OnNet alleges the registry for all domain names with the ".com" suffix is VeriSign, a company located in this judicial district at 350 Ellis Street, Mountain View, California 94043. *Id.* ¶ 5. On or about March 25, 2012, Warv0x registered the domain name play9d.com through Directi Internet Solutions PVT, doing business as PublicDomainRegistry.com. *Id.* ¶ 27. Using a privacy protection service known as PrivacyProtect.org, Warv0x identified his or her address in the registration record for the domain name as ID#10760, P.O. Box 16, Nobby Beach, QLD 4218, Australia, and listed his or her e-mail address as contact@privacyprotect.org. *Id.* ¶ 28.

Starting in March 2012, and continuing to the present day, Warv0x has owned and operated a website under the play9d.com domain name (the "Play9D website"). *Id.* ¶ 3. The Play9d website operates an unlicensed, pirated English language version of the 9Dragons game and sells virtual items that can be purchased within the game with money. *Id.* ¶ 33.

On August 17, 2012, Titus Lin, an attorney representing OnNet, sent a cease and desist letter by

---

[2] Pursuant to Northern District of California Civil Local Rule 7-1(b), the court finds this matter suitable for disposition without oral argument.

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

1 Federal Express and e-mail to the Australian address of PrivacyProtect.org, the intermediate service
2 through which www.play9d.com was registered. *See* Siegel Decl., ECF No. 5-1, ¶ 3; *id.* Exs. A-B,
3 ECF No. 5-2 at 1-7. The letter indicated that OnNet would file an *in rem* civil action against the
4 play9d.com domain name unless PrivacyProtect.org provided Plaintiffs with the true and complete
5 contact information of the owner of the play9d.com domain name. *See* Siegel Decl. Ex. B, ECF No.
6 5-2 at 6. Plaintiff's counsel did not receive a response to the letter. Siegel Decl. ¶ 3, ECF No. 5-1 at
7 2.

8 OnNet filed this action on December 11, 2012. *See* Compl., ECF No. 1. On December 20, 2012,
9 OnNet filed the pending motion to direct service of process by publication ("Motion"). ECF No. 5.
10 OnNet also filed a motion to shorten time, ECF No. 6, which the court granted on December 21,
11 2012. Order, ECF No. 8. Thus, the court now turns to OnNet's motion to direct service by
12 publication.

## ANALYSIS

14 OnNet asks the court to direct service of process against the domain name www.play9d.com in
15 the form proposed in its motion and argues that such relief is appropriate under the Anti-
16 Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2). The court finds that OnNet has
17 fulfilled the statutory prerequisites for such relief and grants its motion.

### I. THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

19 The ACPA contains provisions designed to protect trademark owners from cybersquatters –
20 individuals and entities that have registered domains containing a protected mark. *See* 15 U.S.C.
21 § 1125. The ACPA's *in rem* provisions allow the owner of a mark to file an action against the
22 domain name itself if: (1) the domain name violates rights in a mark registered in the Patent and
23 Trademark Office or protected against unfair competition or trademark dilution under 15 U.S.C.
24 § 1125(a) or (c); and (2) the court finds that the owner through due diligence was not able to find a
25 person who would have been a defendant in a cybersquatting action under 15 U.S.C. § 1125(d)(1).
26 *See* 15 U.S.C. § 1125(d)(2)(A). In some circumstances, the ACPA provides for service by
27 publication. *See id.* at (d)(2)(B). The relevant provisions state:

28 **(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain

C 12-06282 LB (ORDER)
3

name authority that registered or assigned the domain name is located if–

    **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and

    **(ii)** the court finds that the owner–

        **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

        **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by–

            **(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

            **(bb)** publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

15 U.S.C. § 1125(d)(2)(A)-(B). In an *in rem* action under the ACPA, a domain name is deemed to have its situs in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located . . . ." 15 U.S.C. § 1125(d)(2)(C)(i).

## II. WHETHER SERVICE BY PUBLICATION IS APPROPRIATE

Based on OnNet's allegation, this court has *in rem* jurisdiction over www.play9d.com. As alleged in the complaint, Verisign (a corporation in this judicial district) is the domain name registry for all ".com" domain names, including the defendant. *See* Compl., ECF No. 1 ¶ 5. Under the ACPA, the domain name, therefore, has its situs in this judicial district and the court has *in rem* jurisdiction. *See* 15 U.S.C. § 1125(d)(2)(A).

OnNet asks the court to find that it was not able to serve the defendant through reasonable diligence by sending a notice of the violation and intent to proceed to the registrant at the postal and e-mail address provided to the registrar, as required by 15 U.S.C. § (d)(2)(A)(ii)(II)(aa). Mot., ECF No. 5 at 3-4; Siegel Decl., ECF No. 5-1. Based on the Siegel Declaration and the attached exhibits, the court finds that the August 17, 2012 letter to PrivacyProtect.org (the registrant) satisfied the statute.

The final ACPA service of process provision requires OnNet to publish notice of the action as

the court may direct promptly after filing the action. 15 U.S.C. § (d)(2)(A)(ii)(II)(bb). The ACPA does not appear to provide guidance to courts in determining whether the proposed notice is sufficient and merely requires the plaintiff to "publish[] notice of the action as the court may direct promptly after filing the action." 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).

OnNet does not provide the court with any guidance as to how other courts have construed the statute, *see* Mot., ECF No. 5, and the court's own research reveals little consistency in the notices required. For example, in *Facton Ltd. v. gstaronsale.com*, the court permitted the plaintiff to publish notices of its action in the Washington Times, a newspaper circulated in the Eastern District of Virginia (where Verisign was also located), even though the registrant appeared to be located in China. No. 1:10CV1165 (AJT/JFA), 2011 WL 4360113, at *1-2 (E.D. Va. Sept. 19, 2011). On the other hand, in *Cable News Network L.P., L.L.L.P. v. CNNews.com,* the court allowed the plaintiff to effect service on a Chinese company by printing notice of the action for five consecutive days in Chinese, in the Hong Kong newspapers *Sing Tao* and *Apple Daily,* and in English, in the Hong Kong newspaper *South China Morning Post.* 162 F. Supp. 2d 484, 488 (E.D. Va. 2001) *aff'd in relevant part, vacated in part sub nom. Cable News Network, LP, LLLP v. CNNews.com*, 56 F. App'x 599 (4th Cir. 2003).

OnNet proposes publishing a notice for four consecutive Saturdays in the legal notices section of the *Daily News*, a Gold Coast City, Australia newspaper. Mot., ECF No. 5 at 4. The Siegel Declaration establishes that the *Daily News* is a newspaper of general circulation in the area in which PrivacyProtect.org is based that publishes legal notices. *See* Siegel Decl., ECF No. 5-1, ¶¶ 3-6; *id.* Exs. C-E, ECF No. 5-2 at 8-14. The notice will appear in a text box no smaller than 4cm x 5cm. Mot., ECF No. 5 at 4. OnNet's motion contains the text of its proposed notice, *see id.* at 5.

Although OnNet's proposed notice would reach fewer readers than the notice affirmed by the Fourth Circuit in *CNNews.com*, it is more targeted than the notice in *Facton Ltd.* Under these circumstances, OnNet's proposal to publish the notice of action in one Gold Coast, Australia newspaper is appropriate, given that Defendant's trail seems to end there. OnNet has otherwise acted with reasonable diligence under the ACPA to effect service. Accordingly, the court GRANTS OnNet's motion and directs OnNet to publish the notices as proposed. The court VACATES the

hearing now set for January 17, 2013.

This disposes of ECF No. 5.

**IT IS SO ORDERED.**

Dated: January 7, 2013

_____
LAUREL BEELER
United States Magistrate Judge